IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH F. BROCK, JR.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 07-4258** |
| | : | |
| **UNION LOCAL NO. 830, et al.** | : | |

MEMORANDUM AND ORDER

**Kauffman, J.**                                                                                       **July   30,   2008**

Now before the Court is Plaintiff's Motion to Remand (the "Motion"). For the reasons discussed below, the Motion will be granted.

**I. BACKGROUND**

This action arises from an election campaign for the executive board of Defendant Teamsters Local No. 830 ("Local 830"), a local teamsters union affiliated with the International Brotherhood of Teamsters ("IBT"). Compl. ¶ 3. Plaintiff Joseph Brock ("Plaintiff") is a second-generation labor activist and official who has been a teamsters union member since 1979. Id. ¶¶ 14-15. On January 1, 2001, he was elected President of Local 830, a position primarily responsible for negotiating and administering contracts on behalf of union members. Id. ¶¶ 16-17.

Local 830 was scheduled to conduct elections for new union officers in November of 2006. In early August 2005, Plaintiff announced his intention to challenge the incumbent,

-1-

Defendant Dan Grace, for the position of Secretary/Treasurer of Local 830.  Id. ¶ 20.[1]  He recruited a slate of candidates for various union positions to compete with the slate composed of Defendants Grace, Chuck White, Jack O'Rourke, Dan Santosusso, and Glenn Fulcher.  Id.

Plaintiff alleges that as early as November 2005, Defendants Grace, White, O'Rourke, Santosusso, Fulcher, and Susanne DeLuisi "conspired and agreed to undertake a campaign of personal vilification and harassment to retaliate against [him] for challenging their control of Local 830 and to defame his character within the Union so they could prevail in the [upcoming] elections."  Id. ¶ 21.  This harassment took a number of forms, including anonymous threats and telephone calls, the placement of dog excrement in Plaintiff's locked office, and circulation of "embarrassing and obscene" photographs of Plaintiff's daughter.  Id. ¶ 22.

In January 2006, Defendant White allegedly filed a private criminal complaint in Philadelphia Municipal Court, charging Plaintiff with criminal conduct.  Id. ¶ 23.  On May 8, 2006, Plaintiff was exonerated after trial.  Id. ¶ 24.  Plaintiff alleges that because their attempt "to orchestrate a criminal conviction" failed, Defendants "convened a hearing within the union to try [him] on a series of allegations" on October 27, 2006.  Id. ¶ 27.  At this hearing, Plaintiff was disqualified from running in the upcoming union election.  Id. ¶ 28.

On October 30, 2006, Defendants distributed a flyer that "served to blacken [Plaintiff's] character by suggesting that he was a convicted criminal," despite the fact that he was found not guilty at trial.  Id. ¶¶ 30, 32.  The flyer was entitled "Brock Found Guilty of Theft" and stated:

> Following an investigation by the Executive Board of Teamsters Local Union No. 830 spanning more than four months, Joseph Brock, Jr. has been found

---

[1]  As Plaintiff explains, Secretary/Treasurer is the highest-ranking position in Local 830, and President is the second-highest-ranking position.  Compl. ¶ 17.

-2-

>   guilty of the following:
>   -Accepting Employer Contributions
>   -Theft of Local 830 Membership List
>   -Theft of Other Local 830 Property Including Colored Paper, Computer Programs, etc.
>   -Misuse of Office (relative to negotiating favorable credit terms in connection with the printing of campaign literature)
>
>   Despite a series of protests occurring during this period of time, Brock continued to break the law.  Accordingly, by order of the Executive Board of the Teamsters Local Union No. 830, Brock and his entire slate have been disqualified from running for any Union office.

Compl. Ex. A.  According to Plaintiff, Defendants distributed this flyer to harm his reputation and to "prevent him from winning the election and [to remove] him from his position with the Union."  Compl. ¶ 33.[2]

On October 31, 2006, the President of the International Brotherhood of Teamsters stayed the decision of Local 830's executive board and allowed Plaintiff to participate in the election. Id. ¶ 34.  Nevertheless, Defendants continued to distribute the defamatory flyer.  Id.  On November 14, 2006, Plaintiff and his slate were defeated in the Local 830 election.  Id. ¶ 35. Two days later, Plaintiff was relieved of his duties as President of Local 830, and when he began seeking new employment, Defendants allegedly threatened future employers to prevent him from obtaining another job.  Id. ¶¶ 36, 38.

On September 21, 2007, Plaintiff filed this action in the Philadelphia Court of Common Pleas, alleging eight counts under Pennsylvania state law: defamation, invasion of privacy, intentional interference with a prospective business relationship, injurious falsehood, intentional

---

[2]   In the Complaint, Plaintiff alleges that union members, including Defendants Grace, Fulcher, and O'Rourke, "personally distributed this flyer at various locations where Local Union 830 had members."  Compl. ¶ 31.  In the instant Motion, Plaintiff explains that the flyers could be seen by members of the general public as well as union members.

infliction of emotional distress, malicious prosecution, abuse of process, and civil conspiracy.[3] On October 12, 2007, Defendants removed pursuant to 28 U.S.C. § 1441, citing federal question jurisdiction under 28 U.S.C. § 1331 as the basis for removal.

## II.  LEGAL STANDARD

A defendant in a state court may remove his or her case to a United States District Court if that court has original jurisdiction over the action.  28 U.S.C. § 1441.  When removing a state case to federal court, the defendant bears the burden of establishing federal jurisdiction.  See, e.g., Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990).  The statutes governing removal "are to be strictly construed against removal and all doubts should be resolved in favor of remand."  Id. (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)).  "If there is any doubt as to the propriety of removal, the case should not be removed to federal court."  Brown v. Francis, 75 F.3d 860, 865 (3d Cir. 1996).

Generally, "[t]he presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).  "One corollary of the well-pleaded complaint rule developed in the case law, however, is that Congress may so completely pre-empt a particular

---

[3] As stated in the Complaint, Plaintiff's claims for defamation, invasion of privacy, and injurious falsehood arise from publication of the flyer.  His claim for intentional infliction of emotional distress arises from publication of the flyer as well as the other harassing conduct alleged in the Complaint.  His claim for intentional interference with a prospective business relationship arises from the alleged threats made to prospective employers.  The claims for malicious prosecution and abuse of process stem from the filing of false criminal charges, and the claim for civil conspiracy is based on all of the aforementioned allegations.

area that any civil complaint raising this select group of claims is necessarily federal in character." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). Pursuant to this "complete preemption" doctrine, the Supreme Court has recognized that claims arising under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, may be removed from state court even where the complaint seeks relief only under state law. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6-7 (2003) (citing Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968)).

As the Supreme Court has explained, "When resolution of a state-law claim is substantially dependent upon analysis of the terms of a collective bargaining agreement, that claim must either be treated as a § 301 claim . . . or dismissed as preempted by federal-labor contract law." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985) (citation omitted); see also Lingle v. Norge Div. of Magic Chef, 486 U.S. 399, 405-06 (1988) ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute."). However, the LMRA does not preempt every suit that may concern a labor agreement, and "[w]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." Beidleman v. Stroh Brewery Co., 182 F.3d 225, 232 (3d Cir. 1999) (quoting Livadas v. Bradshaw, 512 U.S. 107, 124 (1994)). Thus, for the purpose of determining whether a state tort claim is preempted, the controlling inquiry is "whether evaluation of the tort claim is

inextricably intertwined with consideration of the terms of the labor contract." Allis-Chalmers, 471 U.S. at 213.

## III. DISCUSSION

Plaintiff argues that removal was improper because his state tort claims are independent of any labor agreement and therefore not preempted by the LMRA. Accordingly, he argues that the Court lacks jurisdiction over the claims and that remand is proper. Defendants maintain that Plaintiff's claims require analysis of and are "inextricably intertwined" with the IBT Constitution.[4] Defendants argue that the tort claims therefore are preempted, thus requiring the Court to deny remand.

Although Defendants generally refer to the IBT Constitution and argue that the Court must examine specific portions of it to resolve Plaintiff's claims, they fail to point to any specific provision implicated by the facts here. Plaintiff's claims stem from the publication of an allegedly defamatory flyer that accuses him of theft, misuse of office, and other forms of wrongdoing, as well as Defendants' alleged filing of false criminal charges and various other harassing conduct.[5] While Defendants have attached excerpts from the IBT Constitution that

---

[4]    "[F]or preemption purposes, the term 'labor contract' includes union constitutions." Wall v. Constr. & Gen. Laborers' Union, Local 230, 224 F.3d 168, 178 (2d Cir. 2000); see also Lewis v. Int'l Bhd. of Teamsters, 826 F.2d 1310, 1314 (3d Cir. 1987) ("[A] federal court has jurisdiction under [LMRA] section 301(a) over suits brought by an individual union member against his or her local union or the international union for violation of a union constitution."). Although Plaintiff maintains that he was an at-will employee of Local 830 not subject to any collective bargaining agreement, the IBT Constitution governs his position as President of Local 830.

[5]    In separate action before the Court, Brock alleges that the same defendants violated certain provisions of the IBT Constitution. Defendants argue that because that case is

address procedures for trying union officers accused of wrongdoing, Plaintiff's claims do not challenge the propriety of the procedures used to disqualify him from the election. Rather, his claims challenge the fact that Defendants published an allegedly defamatory flyer announcing the disqualification to all members of the union in locations also accessible to members of the general public. Moreover, the section of the IBT Constitution governing "election protests" provides procedures whereby individual members can make formal challenges to elections, but does not address the propriety of disseminating flyers to all union members during the election period.[6]

Because Defendants have failed to point to a specific provision of the IBT Constitution governing the propriety of publishing the flyer at issue, the Court cannot find that Plaintiff's claims are preempted. See, e.g., Tellez v. Pac. Gas & Elec. Co., 817 F.2d 536, 538 (9th Cir. 1987) (finding that a collective bargaining agreement did not cover the allegedly defamatory act of sending an employee's suspension letter to company managers because the agreement "neither

---

based on an alleged breach of the IBT Constitution, this action also falls under the same agreement. As the Third Circuit has explained, however, "a plaintiff may bring a state law tort action against an employer, even where he could have brought a similar claim based on a provision in his collective bargaining agreement, so long as the state claim does not require interpretation of the collective bargaining agreement. The tort claim falls under state law even though the claim based on the bargaining agreement provision must apply federal law pursuant to section 301." Trans Penn Wax Corp. v. McCandless, 50 F.3d 217, 229 (3d Cir. 1995). Accordingly, the fact that Plaintiff's separate case involves interpretation of the IBT Constitution is not dispositive of the question relevant here: whether the claims in this action are "inextricably intertwined" with the IBT Constitution.

[6] To the extent that Plaintiff's claims also result from the allegedly false criminal complaint filed by Defendants, the threats made by Defendants against Plaintiff's prospective future employers, and other harassing conduct by Defendants (such as leaving dog excrement in Plaintiff's office and threatening his family), such conduct obviously is not covered by the IBT Constitution and cannot be preempted by the LMRA.

-7-

requires management to send written notice of suspension nor provides guidelines in the event such notice is sent," and therefore, "resolution of [the] defamation claim does not require interpretation or consideration of the agreement"); id. at 539 ("[T]he present agreement is silent on work conditions, and vague on disciplinary formalities.  It neither requires nor regulates suspension letters.  Accordingly, examination or interpretation of the agreement would not help to resolve [the intentional infliction of emotional distress] claim.  It follows that the claim should not be preempted."); Sangmeister v. Airborne Express, 2001 U.S. Dist. LEXIS 13466, at *12-17 (E.D. Pa. Aug. 30, 2001) (noting the distinction between "defamatory statements made in the context of a disciplinary investigation and those made outside such proceedings" and finding that because the collective bargaining agreement did not address statements made outside a disciplinary proceeding, the plaintiff's defamation and civil conspiracy claims were not preempted); Meier v. Hamilton Standard Elec. Sys., Inc., 748 F. Supp. 296, 300 (E.D. Pa. 1990) ("To the extent that Meier has alleged in counts one through three that defamatory statements were made outside the limited context of the investigation into drug trafficking at the Teledynamics facility or to individuals who had no connection with the grievance procedures he initiated following his discharge, his claims for defamation, emotional distress, and invasion of privacy are not governed by the [collective bargaining agreement].").[7]

Plaintiff's claims based on publication of the flyer are similar to the claims in Gerow v.

---

[7] Moreover, Defendants have not pointed to any provision of the IBT Constitution that provides an internal grievance procedure for Plaintiff's claims arising from the publication of the flyer. Because Defendants "do not point to any portion of the [labor agreement] that discusses dissemination of information gathered in the disciplinary process or that provides for a remedial procedure for defamation claims," the claims arising from publication of the flyer are not preempted by the LMRA. Wright v. Pepsi Cola Co., 243 F. Supp. 2d 117, 124 (D. Del. 2003).

Kleinerman, 2002 U.S. Dist. LEXIS 13268, at *2 (D.N.J. July 2, 2002), where the defendants, a rival slate of candidates running against the plaintiff in a union election, allegedly circulated a defamatory leaflet during the election campaign.  Although the plaintiff filed his claims for defamation, invasion of privacy, and conspiracy to defame in state court, the defendants removed to federal court and argued that the claims were "inextricably intertwined" with the union's collective bargaining agreement.  Id. at *12.  Noting that the defendants had not pointed to a specific provision of the agreement that was implicated by the claim, the court found that the "action appears to be a common law tort action that happens to arise out of a Union election," rather "than an action that is intertwined with a collective bargaining agreement."  Id. at *12-13.  As in Gerow, the fact that the events alleged in the Complaint took place during a union election does not render these claims intertwined with a labor agreement, and because Defendants have failed to point to a provision in the IBT Constitution that addresses the conduct alleged in the Complaint, they have not met their burden of establishing federal jurisdiction.[8]

## IV.  CONCLUSION

Plaintiff's claims arise under Pennsylvania state law and are not subject to complete preemption under the LMRA.  Accordingly, the Court will remand the action.  Although the Court concludes that remand is appropriate, Defendants' arguments in support of removal were

---

[8] Defendants also argue that because the underlying events allegedly took place during a union election, several of Plaintiff's claims are preempted by Title IV of the Labor Management Reporting and Disclosures Act of 1959 ("LMRDA"), 29 U.S.C. §§ 481-483. Unlike "complete preemption" under the LMRA, however, preemption under the LMRDA does not provide an independent basis for federal court jurisdiction.  See, e.g., Gerow, 2002 U.S. Dist. LEXIS 13268, at *10-11 & n.3 ("[A]t best the LMRDA presents a preemptive federal defense to state law causes of action, which is not sufficient to sustain removal.").

not frivolous, and therefore the Court will deny Plaintiff's request for attorney's fees pursuant to 28 U.S.C. § 1447(c).  See Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005) ("[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied.").  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSEPH F. BROCK, JR.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 07-4258 |
| | : | |
| **UNION LOCAL NO. 830, et al.** | : | |

**ORDER**

**AND NOW**, this 30th day of July, 2008, upon consideration of Plaintiff's Motion to Remand (docket no. 8), Defendants' opposition thereto (docket no. 10), and Plaintiff's Reply (docket no. 13), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that this action is **REMANDED** to the Philadelphia Court of Common Pleas for further proceedings. It is **FURTHER ORDERED** that Plaintiff's request for attorney's fees pursuant to 28 U.S.C. § 1447(c) is **DENIED**.

BY THE COURT:

/s/ Bruce W. Kauffman
BRUCE W. KAUFFMAN, J.